UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| V. | : | Case No.: 1:25-CR-10275-LTS |
| | : | |
| CAROLINA CORREA | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Carolina Correa, by and through counsel, submits this memorandum to aid the Court with imposing a sentence in this case that is "sufficient, but not greater than necessary" to achieve the statutory sentencing purposes of 18 U.S.C. § 3553 (a). For the reasons below, Ms. Correa requests a sentence that involved a term of home detention, following by a period of supervised release.

### I. BACKGROUND

Ms. Correa was originally arrested on November 2, 2023 and charged via criminal complaint[1] with Conspiracy to Commit Money Laundering in violation of 18 U.S.C. 1956 9 (h).[2] At the government's request, she was held without bail pending the outcome of a detention hearing. Ms. Correa then spent four nights in pretrial detention at the Donald W. Wyatt Federal Detention Facility. On November 6, 2023, she reappeared before the Court for a detention hearing, and was graced with conditions of release that included a $50,000.00 unsecured bond and pretrial supervision.[3]

On July 14, 2025, after extensive negotiations with the government, Ms. Correa waived her right to indictment by a federal grand jury and admitted guilt a one-count criminal information on June 27, 2025, which also charged with her with Conspiracy to Commit

---

[1] Document #4 on the docket.
[2] PSR, ¶.1.
[3] *Id.*

Money Laundering.[4]  She did this without the benefit or protection of a written plea agreement.[5]  Ms. Correa is next scheduled to appear before the Court for sentencing on February 4, 2026.

## II. THE PRESENTENCE REPORT

U.S. Probation issued Ms. Correa's final presentence report (PSR) on January 16, 2026. The PSR calculates her total offense level at 29[6] and a criminal history category of I,[7] with a resulting, advisory U.S. Sentencing Guidelines (U.S.S.G.) range of imprisonment from 87-108 months.[8]  The Defense has no objection to the U.S.S.G. calculations.

## III. SENTENCING FACTORS AND CONSIDERATIONS

The District Court is required to fashion a sentence that is "sufficient, but not greater than necessary" to achieve the statutory purposes of 18 U.S.C. § 3553 (a).  *United States v. Booker*, 543 U.S. 220 (2005).   Sentencing should begin with a calculation of the applicable sentencing guidelines range.  *Gall v. United States*, 128 S. Ct. 586, 596 (2007) (*citing Rita v. United States*, 127 S. Ct. 2456, 2480 (2007)).  The guidelines calculation is a starting point and initial benchmark for the Court to consider; however, it is not the only sentencing consideration.  *Id.* A Court may not presume the guidelines range is reasonable but must make an individualized assessment of each defendant based upon the facts presented in each case.  *Gall,* 128 S. Ct. at 597.  After both parties are afforded an opportunity to argue for whatever sentence they deem appropriate, the Court must then consider the factors[9] of 18 U.S.C. § 3553 (a) to determine the

---

[4] PSR, ¶.2.
[5] PSR, ¶.3 and 125.
[6] PSR, ¶.98 and 124.
[7] PSR, ¶.102, 103, and 124.
[8] PSR, ¶.124
[9] To determine an appropriate sentence that is sufficient, but not greater than necessary, the Court shall consider the following:
    (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2)  the need for the sentence imposed:

most appropriate sentence in the instant case. *Id*. In support of its sentencing recommendation, the Defense asks the Court to consider the following information.

### A. Ms. Correa's Conduct While on Pretrial Release

As the Court knows, Ms. Correa has no criminal history and appears for sentencing as a first-time offender. She served a total of six days in pretrial custody. This is a very short period of incarceration, but for Ms. Correa, it felt like a lifetime. It was more than enough time to command her respect for the law, contrition for the crime that caused her to come before this Court, and dissuade her from ever reoffending.

Ms. Correia has remained on pretrial release for approximately 27 months. According to Pretrial Services, she has remained fully compliant during this time period. She even agreed to meet representatives of the government, after her arrest and before her guilty plea, to answer questions they posed, specifically about actions and misconduct in this case. From Ms. Correa's perspective, she cooperated with the government in connection with her own prosecution. This led, in part, to the government offering her the opportunity to admit guilt to a one-count criminal complaint, as a way to cap her criminal exposure in this case. She asks the Court to take this all into consideration when adjudging her criminal sentence.

---

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
(5) any pertinent policy statement issued by the Sentencing Commission;
(6) the need to avoid unwarranted sentence disparities among the defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553 (a).

B. **History and Characteristics of Ms. Correa**

Ms. Correa is affable, caring, well-spoken, well-liked, and exceptionally bright young woman who overcome many challenges. She was born and raised in Colombia.[10] While there, she lived in poverty stricken conditions. Her family members were also victims to violent attacks by members of a violent, lawless, guerilla organization.[11] When refusing to comply with the group's demands and extortion, Ms. Correa's paternal grandparents and her father were murdered.[12] She was approximately age 7 when these atrocities occurred.[13]

After the death of her father and paternal grandparents, then 7 year-old Carolina was raised by her mother, maternal aunt, and grandmother.[14] Less than one year later, Ms. Correa's aunt tragically died in a motorcycle accident.[15] While driving the motorcycle, she was struck and killed by a public bus. Soon after, Ms. Correa's maternal grandmother passed away from a heart attack. Emotionally exhausted by this series of tragic events, Mr. Correa immigrated to the United States with her mother and brother, settling in Rhode Island.[16] She has called the Ocean State home for most of her life. After relocating here, Ms. Correa's mother found new love in the man that Carolina refers to as her stepfather.[17] They raised her together, and remain strong presences in her life today.

Despite the aversity she encountered as a young child, Carolina has made significant accomplishments throughout her life. She attended all Rhode Island-based public schools (elementary, middle, and high schools). As a young student, she served on the swim team,

---

[10] PSR, ¶.108.
[11] Id.
[12] Id.
[13] Id.
[14] PSR, ¶.108.
[15] Id.
[16] PSR, ¶.109.
[17] Id.

debate team, mock trial team, taught swim lessons to special needs kids at the YMCA, she tutored (English) at the International Institute of Rhode Island, and swam for the Boys and Girls Club.  In 2009, as a high school student, she won the National Youth of the Year Award that yielded her an invitation to the White House to meet President Barack Obama.[18]  After graduating from Shea High School in Pawtucket, RI, she went off to Assumption University from which she graduated in 2013 after earning a Bachelor's Degree with double majors in Political Science and Psychology.[19]  While in college, she was on the swim team, and spent her winter and summer recesses working on various military bases in England and Germany, coaching people who worked at youth clubs, which serviced military service member families that were stationed overseas.

After college, Carolina worked in philanthropy to raise money for affordable housing and early childhood educations endeavors.  She has always remained steadily employed.  She is most proud of her former position with United Way, a non-profit organization, where she served in the Rhode Island and Massachusetts offices as a major gifts manager from 2013 to 2023.  She resigned from this position soon after her arrest.  Ms. Correa's arrest was well-publicized, as was her former romantic relationship with Jasdrual Perez, who was also prosecuted before this Court.  Ms. Correa's previous, and otherwise stellar reputation was forever besmirched by her arrest and charges in this case, as well as her long-term connection to Mr. Perez, who was well documented in the media as a dangerous drug trafficker.  Ms. Correa's actions essentially destroyed her career.

---

[18] PSR, ¶.110A.
[19] PSR, ¶.116.

Since losing her identity and position with United Way, Ms. Correa has tried to reinvent herself. She earned certificates in real estate investments and as a certified nursing assistant.[20] She presently supports herself by running three small companies: Sleek Staging Studio LLC and Stageflow LCC, which are home staging companies, and Sterling Realty, which involves real estate investing.

Ms. Correa's resume, background, and characteristics paint a more accurate picture of who she truly is as a person, opposed to the uncharacteristic behavior for which she is now convicted. For many felons who come before this Court, a felony conviction is a badge of honor. For Ms. Correa, it is akin to the Scarlett Letter. This alone will cause her to suffer indefinite and immeasurable punishment and hardships for the remainder of her adult life.

Ms. Correa has no one to blame but herself for this fall from grace. She chose to align herself with a man who was both addicted to, and trafficking in illegal narcotics. The old saying goes that "love is blind." This holds true for Ms. Correa, and somewhat, still to this very day. She and Mr. Perez were in an intricate dating relationship for approximately three years. Their connection continued even after Mr. Perez's arrest, and while they were both pending criminal prosecution. Ms. Perez's life is also intertwined with certain family members of Mr. Perez, to include his mother, his sister, and his younger brother, whom Ms. Correa mentored and encouraged to go off to college.

As the days, weeks and months pass, Mr. Correa's vision regarding her past actions, mistakes, and poor choice to align herself with Mr. Perez becomes increasingly clearer. She hopes the Court will recognize this, and acknowledge that her actions in this case are completely uncharacteristic, and not reflective of her true nature or persona.

---

[20] PSR, ¶.116.

Ms. Correa suffers from a number of physical and mental ailments. She regularly combats migraine headaches, and an underlying seizure disorder for which she takes medication and is under the care of a neurologist. As for mental health, she is diagnosed with Post Traumatic Stress Disorder (PTDS) from her early childhood experiences, and severe anxiety disorder. She is presently in counseling with Karen Sheehan and Sheehan Psychotherapy Associates in Warwick, RI.

Ms. Correa is no longer residing with Mr. Perez's immediate family members and is no longer romantically involved with Mr. Perez. She is in a new and arguably healthier relationship. Her new boyfriend is a young professional who works in banking and compliments her as a real partner. He is aware of her legal circumstances, and remains fully supportive of her during this difficult time.

## IV. ATTACHMENTS

A. Certificates;

B. Statements of Support;

C. Photos; and

D. Carolina Correa's Letter to the Court.

## V. CONCLUSION

Based upon the foregoing, the Defense respectfully asks the Court to impose a sentence against Ms. Correa that includes a term of home detention and followed by a term of supervise release.

                                                Defendant,
                                                CAROLINA CORREA
                                                By her Counsel

                                                /s/ John L. Calcagni III, Esq.
                                                John L. Calcagni III (Bar No.: 6809)

        Law Office of John L. Calcagni III, Inc.
        72 Clifford Street, Suite 300
        Providence, RI 02903
        Phone: (401) 351.5100
        Fax: (401) 351.5101
        Email: jc@calcagnilaw.com

## **CERTIFICATION**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered Participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on February 2, 2026.

        /s/ John L. Calcagni III, Esq.
        John L. Calcagni III (Bar No.: 6809)
        Law Office of John L. Calcagni III, Inc.
        72 Clifford Street, Suite 300
        Providence, RI 02903
        Phone: (401) 351.5100
        Fax: (401) 351.5101
        Email: jc@calcagnilaw.com

## **CERTIFICATION**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered Participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on January 23, 2026.

/s/ John L. Calcagni III, Esq.
John L. Calcagni III (Bar No.: 6809)
Law Office of John L. Calcagni III, Inc.
72 Clifford Street, Third Floor
Providence, RI 02903
Phone: (401) 351.5100
Fax: (401) 351.5101
Email: jc@calcagnilaw.com